Youssef H. Hammoud, CA Bar No. 321934
Email: yh@lawhammoud.com
**HAMMOUD LAW, P.C**
3744 East Chapman Avenue, #F12269
Orange, California 92859
Telephone: (949) 301-9692
Facsimile: (949) 301-9693

*Attorneys for Plaintiff Ross Hunter*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSS HUNTER,<br><br>Plaintiff,<br><br>v.<br><br>KIKOFF LENDING, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; and EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendants. | Case No.: '23CV0302 RBM KSC<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>FCRA, 15 U.S.C. § 1681 *et seq.* |

Plaintiff Ross Hunter, ("Plaintiff" or "Mr. Hunter") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Kikoff Lending, LLC ("Kikoff"), and Defendants Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax") (referenced together as "CRA Defendants").

1

# INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by CRA Defendants. Plaintiff contends the CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2. Plaintiff's Complaint also alleges that CRA Defendants also violated 15 U.S.C. § 1681 *et seq.* by failing to reasonably investigate Plaintiff's consumer disputes, which each resulted in Defendants' reporting inaccurate information about Plaintiff.

3. Plaintiff's Complaint also arises from violations of the FCRA against Defendant Kikoff for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Defendants Experian and Trans Union.

# JURISDICTION AND VENUE

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

5. Venue in the Southern District of California is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District or are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

# PARTIES

6. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

7. Plaintiff is a natural person who resides in San Diego, California.

2

8. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9. Defendant Kikoff is a financial institution engaged in the business of giving credit and collecting debt. Kikoff is also a "furnisher," as contemplated by 15 U.S.C. § 1681s-2. Upon information and belief, Kikoff is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. Kikoff can be served at its headquarters located at 75 Broadway, Suite 226, San Francisco, California 94111-1458.

10. Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

11. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia 30309.

12. Defendants Experian and Equifax regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. The CRA Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. §1681a(f) of the FCRA.

13. During all times pertinent to this Complaint, Kikoff and the CRA Defendants were authorized to conduct business in the State of California and conducted business in the State of California on a routine and systematic basis.

14. During all times pertinent to this Complaint, Kikoff and the CRA Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

15. Any violations by Kikoff and the CRA Defendants were not in good faith, were knowing, negligent, willful, and/or intentional.

16. Neither Kikoff nor the CRA Defendants maintained procedures reasonably adapted to avoid any such violations.

## FACTUAL BACKGROUND

17. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

18. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

19. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

20. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

21. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

22. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

23. Experian and Equifax, two of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

24. The CRA Defendants' consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

25. The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRAs by furnishers, and other information is independently gathered by CRAs from third party providers, vendors, or repositories, like computerized reporting services like PACER and Lexis-Nexis.

26. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

27. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendants' consumer reports.

28. The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

29. FICO Scores are calculated using information contained in the CRA Defendants' consumer reports.

30. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

31. FICO Scores factor in the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

   a) "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

   b) The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA indicates that a consumer's "amount of

6

  debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

32. Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

33. DTI compares the total amount a consumer owes to the total amount a consumer earns.

34. A consumer's income, however, is not included in their consumer report; only their amount of debt is.

35. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest and lower credit limits).

**A. Allegations Specific to Credit Reporting of Plaintiff**

36. At some point prior to the relevant time period, Kikoff began reporting a revolving credit account on Plaintiff's credit (the "Account").

37. Plaintiff has never owned or been responsible for an account from Kikoff.

38. In late 2022, Plaintiff received notice of the Account's existence on his credit via an alert that the Account had been reported as charged off.

39. Plaintiff thereafter pulled his Experian, Equifax, and non-party Trans Union, LLC ("Trans Union") credit reports.

40. The CRA Defendants and Trans Union reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual, or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

41. Experian and Equifax were both reporting the Account as charged off with a balance of $48 and a past due amount of $14.

42. This reporting was patently incorrect, and Plaintiff does not, and has never, owned or been responsible for the Account.

43. Upon information and belief, Experian and Equifax's inaccurate reporting was the result of the failure to maintain reasonable procedures to ensure maximum possible accuracy of consumer reports.

44. Upon information and belief, Experian and Equifax's unreasonable procedures related to identification mixed Plaintiff's identity with that of another individual who owned the Account.

45. Upon information and belief, Experian and Equifax both maintain multiple social security numbers assigned to Plaintiff, despite Plaintiff being assigned only a single social security number.

46. Upon information and belief, Experian and Equifax both identify Plaintiff as a senior citizen, despite Plaintiff being only fifty-seven years old.

47. Notably, Trans Union, the other "Big 3" CRA, did not report the Account on Plaintiff's credit report.

48. Upon information and belief, Kikoff furnished the inaccurate information regarding the Account to all three CRAs, but Trans Union's reasonable policies and procedures blocked the reporting of inaccurate information.

49. Plaintiff contacted Kikoff and requested that Kikoff either provide proof that he had opened the Account or delete the Account from his credit report.

50. Kikoff informed Plaintiff that, even though they could not locate any record of him owning the Account, they would not delete the reporting of the Account pursuant to their policies and procedures.

51. Plaintiff submitted online disputes to Experian on three separate occasions between November and December 2022. In all three instances, Experian responded to the disputes, and each time failed to correct the inaccurate reporting.

52. Upon information and belief, Kikoff received each of Plaintiff's disputes from Experian, as required by 15 U.S.C. § 1681i, but, on each occasion,

failed to correct its reporting.

53. Experian did not investigate each of Plaintiff's disputes; instead, pursuant to its unreasonable procedures, on each occasion, it merely forwarded an automated dispute form to Kikoff.

54. On each occasion of receiving Plaintiff's dispute, rather than perform an investigation based on Plaintiff's dispute, Experian merely parroted information furnished by Kikoff that indicated the Account was delinquent and that Plaintiff owed a past due balance.

55. Kikoff failed to conduct a reasonable investigation after each time it received notice of Plaintiff's dispute from Experian.

56. Kikoff failed, among other things, to review (or intentionally ignored) all relevant information regarding each of Plaitniff's disputes, including a prior communication with Plaintiff wherein Kikoff admitted that it could not find a record of Plaintiff owning the Account.

57. Consequently, Kikoff continued to furnish inaccurate data to the CRA Defendants, despite possessing information proving that its reporting was inaccurate.

58. Kikoff's failure to provide the Defendant CRAs with accurate information about the Account is particularly egregious as Kikoff was notified of the inaccurate information through Plaintiff's disputes and had independent knowledge of the veracity of Plaintiff's position.

59. Kikoff and the CRA Defendants inaccurately reported that Plaintiff owed a balance that Plaintiff did not actually owe, and also reported inaccurate account statuses and/or payment histories.

60. Kikoff and CRA Defendants' reporting of the Account is patently false/incorrect and therefore inaccurate.

61. If not patently false, Kikoff and CRA Defendants' reporting of the Account is materially misleading and therefore inaccurate.

62. Plaintiff specifically notified Experian that the Account was being reported inaccurately, but Experian rejected this specific notice, failed to perform any investigation, and merely parroted Kikoff's reporting.

63. Plaintiff specifically notified Kikoff that the Account was being reported inaccurately, Kikoff ignored Plaintiff's dispute, failed to conduct a proper investigation, and continued to report inaccurate information.

**B.     Plaintiff's Damages**

64. The actions and failures of the Defendants have directly impacted Plaintiff's credit score by adding a negative or derogatory account to Plaintiff's overall consumer credit.

65. Upon information and belief, had Defendants accurately reported the Account, Plaintiff's credit scores and/or DTI would have been better.

66. During the time wherein Defendants were inaccurately reporting the Account, Plaintiff was denied credit by non-party Continental Financing, which decision was based, upon information and belief, on consumer credit information reported by Experian and/or Equifax.

67. During the time wherein Defendants were inaccurately reporting the Account, Plaintiff applied for a Capital One credit card. However, upon information and belief, Plaintiff's credit rate and terms were less favorable due to the inaccurate reporting by Defendants.

68. As a direct result of Kikoff and the CRA Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

69. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, anxiety, and sleepless nights.

# CAUSES OF ACTION

## COUNT I
## CRA DEFENDANTS
### Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

70. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

71. The FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

72. In this case, the CRA Defendants negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information.

73. The CRA Defendants independently sought information about Plaintiff's consumer credit information and voluntarily reported it in Plaintiff's consumer reports.

74. When the CRA Defendants procured and published Plaintiff's consumer credit information, they had an obligation to ensure they followed reasonable procedures to report the information with maximal accuracy.

75. The CRA Defendants had actual knowledge that Plaintiff's file was mixed with that of another individual or other individuals, as indicated by the multiple social security numbers each CRA Defendant had assigned to Plaintiff, and as indicated by the discrepancies in Plaintiff's age.

76. Instead of verifying the ownership of the new Account in light of the obvious inconsistencies being reported, the CRA Defendants merely parroted Kikoff's reporting of the Account as seriously delinquent with a past due balance.

77. The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report

accurate information when the CRAs knew or should have known the information they were reporting is inaccurate, or otherwise contradicted by information known by the CRAs, reported to the CRAs, or reasonably available to Defendants.

78. The CRA Defendants therefore further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, where, as here, the CRA Defendants possessed sufficient notice of errors in Plaintiff's report to require a thorough review of the Account being reported.

79. Experian also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, despite receiving three separate disputes from Plaintiff.

80. The CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful. The CRA Defendants willfully chose to ignore the obvious mixed file in Plaintiff's report, and Experian willfully chose to ignore Plaintiff's dispute in favor of simply parroting the reporting of Kikoff.

81. Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

82. The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

83. Plaintiff suffers actual damages, including a decreased credit score, harm to his reputation, loss of credit opportunities, and other financial harm caused by the CRA Defendants inaccurately reporting the Account.

84. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

85. The CRA Defendants are direct and proximate causes of Plaintiff's damages.

86. The CRA Defendants are substantial factors in Plaintiff's damages.

87. The CRA Defendants' acts, as described above, were done willfully and knowingly; or, alternatively, were committed negligently.

88. Therefore, the CRA Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## COUNT II
## EXPERIAN
## Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681i

89. When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

90. When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

91. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

92. When a CRA receives a dispute pursuant to § 1681i, and conducts the reinvestigation, the CRA is required to "provide written notice" to that consumer of the results of the reinvestigation "not later than 5 business days after the completion of the reinvestigation." 15 U.S.C. § 1681i(a)(6)(A).

93. Where a CRA deletes information from a consumer's file after receiving a § 1681i dispute, the CRA is required to "maintain reasonable procedures designed to prevent the reappearance […] of information that is deleted…" 15 U.S.C. §

1681i(a)(5)(C). To this end, the FCRA prohibits the reinsertion of such deleted information unless such information is certified as accurate by the furnisher. *Id.* § 1681i(a)(5)(B).

94. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, the Experian also violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Account even after Plaintiff notified Experian of the inaccurate information in Plaintiff's credit file.

95. Experian's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

    a) Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    b) Failing to consider all relevant information while investigating Plaintiff's dispute.

    c) Failing to include all relevant information when notifying Kikoff of Plaintiff's dispute.

96. Instead of reasonably reinvestigating Plaintiff's dispute, Experian merely parroted Kikoff's reporting, "verified" the reporting as accurate, and responded to Plaintiff's dispute by indicating that it would continue to report the Account inaccurately.

97. Experian's inaccurate reporting damaged Plaintiff's creditworthiness.

98. Plaintiff suffers actual damages, including a decreased credit score, harm to his reputation, loss of credit opportunities, and other financial harm caused by Experian inaccurately reporting the Account.

99. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

100. Experian is a direct and proximate cause of Plaintiff's damages.

101. Experian is a substantial factor in Plaintiff's damages.

102. Experian's acts, as described above, were done willfully and knowingly; or, alternatively, were committed negligently.

103. Therefore, Experian is individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## COUNT III
## KIKOFF
## Violations of the FCRA, 15 U.S.C. § 1681s-2(b)

104. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

105. The FCRA requires furnishers of information like Kikoff to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, it must report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

106. Kikoff knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and evidenced by case law. Kikoff obtained or had available substantial written materials that apprised them of its duties under the FCRA. Despite knowing these legal obligations, Kikoff acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

107. Plaintiff disputed the Account tradeline on three separate occasions through Experian, a national CRA.

108. Thereafter, Experian forwarded Plaintiff's disputes to Kikoff, notifying Kikoff that Plaintiff was disputing the information it had furnished about the Account.

109. Kikoff received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

110. Kikoff continues to furnish inaccurate information about Plaintiff to the Defendant CRAs, even though Kikoff possesses all relevant information about the Account and the inaccuracy that Plaintiff disputed.

111. The inaccurate Account materially and adversely affects Plaintiff's credit standing.

112. On at least one occasion within the past two years, by example only and without limitations, Kikoff violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes to Experian.

113. Kikoff violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

   a) Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

   b) Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

   c) Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

   d) Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

   e) Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

    f) Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

    g) Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

114. Kikoff unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

115. Kikoff is a direct and proximate cause, as well as substantial factor in causing damage and harm to Plaintiff.

116. Consequently, Kikoff is liable to Plaintiff for the full amount of statutory, actual, and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## COUNT IV
## CRA DEFENDANTS
## Violations of Cal. Civ. Code § 1785.14

117. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

118. The CCRAA provides additional regulatory requirements concerning consumer reporting agencies, like CRA Defendants, who operate within the state of California or prepare consumer reports on consumers located within the state of California.

119. The CCRAA requires consumer reporting agencies, like CRA Defendants, to maintain reasonable procedures to ensure they compile and disburse consumer information with maximal accuracy. Cal. Civ. Code § 1785.14(b).

120. It is wholly unreasonable to maintain procedures that allow records to be reported about consumers based on lax, imprecise, and faulty algorithms.

121. Specifically, it was wholly unreasonable for CRA Defendants to report that Plaintiff was associated with the Kikoff credit account when that was not accurate.

122. Each of CRA Defendants violated § 1785.14(b) of the CCRAA by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report.

123. As a result of CRA Defendants' respective failures to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

124. CRA Defendants' respective violations of the CCRAA were willful. Therefore, CRA Defendants are each liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. Cal. Civ. Code § 1785.31(a)(2).

125. Alternatively, CRA Defendants' respective violations of the CCRAA were negligent. Therefore, CRA Defendants are each liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. Cal. Civ. Code § 1785.31(a)(1).

126. In any event, CRA Defendants are each liable for Plaintiff's reasonable attorney's fees and costs, pursuant to Cal. Civ. Code § 1785.31(d).

### COUNT V
### EXPERIAN
### Violations of Cal. Civ. Code § 1785.16

127. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

128. The CCRAA requires consumer reporting agencies, like Experian, to reinvestigate and record the status of disputed information when notified by a consumer that an item is inaccurate or incomplete. Cal. Civ. Code § 1785.16(a).

129. When a consumer reporting agency's reinvestigation determines that disputed information is found to be inaccurate, missing, or can no longer be verified by the evidence submitted, the consumer reporting agency is required to correct or delete that information from the consumer's file. Cal. Civ. Code § 1785.16(b).

130. Experian violated § 1785.16(b) of the CCRAA by failing to reasonably reinvestigate each of Plaintiff's multiple disputes.

131. Experian's violations of the CCRAA were willful. Therefore, Experian is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. Cal. Civ. Code § 1785.31(a)(2).

132. Alternatively, Experian's violations of the CCRAA were negligent. Therefore, Experian is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. Cal. Civ. Code § 1785.31(a)(1).

133. In any event, Experian is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to Cal. Civ. Code § 1785.31(d).

## **JURY DEMAND**

134. Plaintiff hereby demands jury trial on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

a) Declaratory judgment that the CRA Defendants violated the FCRA, 15 U.S.C. § 1681e(b) and § 1681i;

b) Declaratory judgment that Kikoff violated the FCRA, 15 U.S.C. § 1681s-2(b);

c) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

|     |     |     |
| --- | --- | --- |
| 1   | d)  | An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); |
| 3   | e)  | An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2), |
| 5   | f)  | Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); |
| 7   | g)  | Actual damages pursuant to Cal. Civ. Code §§ 1785.31(a)(1) and/or 1785.31(a)(2); |
| 9   | h)  | Statutory damages pursuant to Cal. Civ. Code §§ 1785.31(a)(1) and/or 1785.31(a)(2); |
| 11  | i)  | Punitive damages pursuant to Cal. Civ. Code § 1785.31(a)(2); |
| 12  | j)  | Costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1785.31(d); |
| 14  | k)  | Punitive damages to be determined at trial, for the sake of example and punishing defendant for its malicious conduct, pursuant to Cal. Civ. Code § 3294; and |
| 17  | l)  | Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief. |

Dated: February 15, 2023      **HAMMOUD LAW, P.C.**

By: */s/ Youssef H. Hammoud, Esq.*
Youssef H. Hammoud, Esq., CA Bar No. 321934
3744 East Chapman Avenue, #F12269
Orange, CA 92859
Email: yh@lawhammoud.com
Telephone: (949) 301-9692
Facsimile: (949) 301-9693

*Attorneys for Plaintiff Ross Hunter*